IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| EQUIPMENT ACQUISITION RESOURCES, INC., | ) ) | |
| | ) | Case No. 09bk39937 |
| Debtor. | ) ) | |
| | ) | |
| WILLIAM A. BRANDT, JR., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc., | ) ) ) ) | Hon. Timothy A. Barnes |
| Plaintiff. | ) ) | Adv. No. 11ap02236 |
| v. | ) ) | |
| PLAINSCAPITAL LEASING, LLC, | ) ) | |
| Defendant. | ) ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court arises out of eleven different motions to dismiss filed individually by separate defendants in eleven different causes of action[1] brought by William A. Brandt, Jr. as the Plan Administrator (the "Plaintiff" or the "Plan Administrator") for Equipment Acquisition Resources, Inc. ("EAR" or the "Debtor"). The matter is fully briefed and the court conducted hearings on the matter and considers whether the causes of action raised by the Plaintiff in this instance, matters of avoidance under sections 544 and 548 of title 11 of the United States Code (the "Bankruptcy Code"), state fraudulent conveyance law and federal preference law, are properly brought by the Plaintiff in the Second Amended Complaints (as defined below).

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or

---

[1] As a matter of judicial economy, this Memorandum Decision is being entered only in the above-captioned adversary proceeding. The court will concomitantly enter orders in each of the eleven matters making this Memorandum Decision applicable therein.

arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding to avoid and recover fraudulent conveyances arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H). A proceeding to avoid and recover preferences arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(F); *KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 895 (Bankr. N.D. Ill. 2012) (Barnes, J.); *Burtch v. Seaport Capital, LLC, et al. (In re Direct Response Media, Inc.)*, 466 B.R. 626, 646 (Bankr. D. Del. 2012). A motion to avoid and recover a fraudulent conveyance under sections 544(b), 548, and 550 of the Bankruptcy Code arises in a case under title 11 and is also specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H); *Kimball Hill, Inc.*, 480 B.R. at 895; *Zazzali v. Swenson, et al. (In re DBSI, Inc.)*, 466 B.R. 664, 665–66 (Bankr. D. Del. 2012).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

In considering the Motions to Dismiss (as defined below), the court has considered the arguments of the parties at the April 22, 2013 hearing (the "Hearing"), and has reviewed and considered the Motions to Dismiss (as defined below), any exhibits submitted in conjunction therewith, as well as:[2]

(1) The Plaintiff filed on or about October 31, 2012, the following Second Amended Complaints (collectively the "Second Amended Complaints").

   a. American Bank, FSB (the "American 2nd Amend. Comp.") (Adv No. 11-02200) [Docket No. 34];

   b. The CIT Group/Equipment Financing, Inc. (the "CIT 2nd Amend. Comp.") (Adv No. 11-02203) [Docket No. 39];

   c. IBM Credit, LLC (the "IBM 2nd Amend. Comp.") (Adv No. 11-02227) [Docket No. 45];

   d. KLC Financial, LLC, *et al.* (the "KLC 2nd Amend. Comp.") (Adv No. 11-02222) [Docket No. 49];

---

[2] As a matter of formality the court notes that a number of arguments were raised by the Defendants (as defined below) in the Motions to Dismiss (as defined below) that were not argued at the Hearing. The Defendants' failure to raise those issues at the Hearing does not foreclose them from having rested on the pleadings as they were submitted. To the extent that an argument was raised in a Motion to Dismiss and is not addressed in this Memorandum Decision it is because the court has considered such argument and finds it to be not well taken for the determination of this matter.

    e. Leasing One Corporation (the "Leasing One 2nd Amend. Comp.") (Adv No. 11-02224) [Docket No. 41];

    f. Pentech Financial Services, Inc. (the "Pentech 2nd Amend. Comp.") (Adv No. 11-02231) [Docket No. 35];

    g. People's Capital and Leasing Corporation (the "People's 2nd Amend. Comp.") (Adv No. 11-02233) [Docket No. 39];

    h. PlainsCapital Leasing, LLC (the "PCL 2nd Amend. Comp.") (Adv No. 11-02236) [Docket No. 40];

    i. Suntrust Leasing Corporation (the "Suntrust 2nd Amend. Comp.") (Adv No. 11-02201) [Docket No. 37];

    j. TD Banknorth Leasing Corporation (the "TD Bank 2nd Amend. Comp.") (Adv No. 11-02582) [Docket No. 37]; and

    k. U.S. Bancorp, Inc., *et al.* (the "US Bancorp 2nd Amend. Comp.") (Adv No. 11-02196) [Docket No. 64].

(2) Within the time period prescribed by the applicable rules, each of the eleven defendants (collectively the "Defendants") in this matter filed its individual, renewed motion to dismiss (collectively the "Motions to Dismiss" and, as to each generally, a "Motion to Dismiss"), as well as any responses and replies filed in response, as follows:

    a. American Bank, FSB (the "American Motion to Dismiss") (Adv No. 11-02200) [Docket No. 37];

    b. The CIT Group/Equipment Financing, Inc. (the "CIT Motion to Dismiss") (Adv No. 11-02203) [Docket No. 43];

    c. IBM Credit, LLC (the "IBM Motion to Dismiss") (Adv No. 11-02227) [Docket No. 48];

    d. KLC Financial, LLC, *et al.* (the "KLC Motion to Dismiss") (Adv No. 11-02222) [Docket No. 55];

    e. Leasing One Corporation (the "Leasing One Motion to Dismiss") (Adv No. 11-02224) [Docket No. 46];

    f. Pentech Financial Services, Inc. (the "Pentech Motion to Dismiss") (Adv No. 11-02231) [Docket No. 40];

    g. People's Capital and Leasing Corporation (the "People's Motion to Dismiss") (Adv No. 11-02233) [Docket No. 46];

    h. PlainsCapital Leasing, LLC (the "PCL Motion to Dismiss") (Adv No. 11-02236) [Docket No. 44];

    i. Suntrust Leasing Corporation (the "Suntrust Motion to Dismiss") (Adv No. 11-02201) [Docket No. 40];

    j. TD Banknorth Leasing Corporation (the "TD Bank Motion to Dismiss") (Adv No. 11-02582) [Docket No. 40]; and

    k. U.S. Bancorp, Inc., *et al.* (the "US Bancorp Motion to Dismiss") (Adv No. 11-02196) [Docket No. 68].

## BACKGROUND

On October 23, 2009, in his prior capacity as Chief Restructuring Officer for Equipment Acquisition Resources, Inc., Plaintiff William A. Brandt, Jr. filed EAR's voluntary chapter 11 petitions. On July 15, 2010, the court confirmed EAR's Second Amended Plan of Liquidation (the "Plan") and the Plaintiff was appointed as the Plan Administrator, with the authority to pursue "Litigation Claims," as defined in the Plan. The Plaintiff brings the claims alleged in the adversary proceedings at bar here pursuant to that authority.

Prior to the date hereof, the court considered whether it should dismiss the Plaintiff's First Amended Complaints (collectively the "First Amended Complaints") in these adversary proceedings. The court heard arguments on numerous motions to dismiss at an omnibus hearing conducted in 2012. In a series of Memorandum Decisions dated September 28, 2012 (collectively, the "Original Memorandum Decision"),[3] *see, e.g., Brandt v. PlainsCapital Leasing, LLC (In re Equip. Acquisition Res., Inc.)*, 483 B.R. 823, 833–35 (Bankr. N.D. Ill. 2012) (Barnes, J.), the court rejected the majority of the arguments raised in the motions to dismiss, but found that the First Amended Complaints failed to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure (hereafter, "Rule 9(b)"), as described in *Twombly* and *Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The court granted leave to amend the First Amended Complaints, but ordered that if no amendment should be forthcoming in the allotted time, that the First Amended Complaints be dismissed.

On or about October 31, 2012, the Plaintiff filed the Second Amended Complaints. In response, the Defendants each filed a Motion to Dismiss.

## DISCUSSION

As noted above, this is the second round of motions to dismiss. In the first round, the court heard extensive oral argument and, after considering the arguments and the parties' filings, concluded that while the Plaintiff might be able to meet the Rule 9(b) standards, the First Amended Complaints lacked the specificity required to satisfy *Twombly* and *Iqbal*. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555–56. In particular, the court found that the arguments raised by counsel at oral argument advanced the Plaintiff's theories in a way that the First Amended Complaints had not. As a result, the court granted leave to the Plaintiff to amend its First Amended Complaints to

---

[3] As an additional matter of judicial economy, the court adopts its previous findings insofar as they relate to the transactions as they remain pled in the Second Amended Complaints. The court cannot adopt its previous findings in total because the Second Amended Complaints, as will be discussed in greater detail herein, actually lost specificity with regards to certain elements.

include the type of detail the Plaintiff had raised in oral argument but had failed to include in the complaints themselves.

It is well established that, in general, plaintiffs are afforded a large degree of the benefit of the doubt in considering motions to dismiss. *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 626 (7th Cir. 1999) ("Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a plaintiff plead a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"). Such is not the case for matters arising out of fraud, as per Rule 9(b), however. *See id.* at 627 ("FRCP Rule 9(b) embodies the exception to this otherwise lenient rule. Rule 9(b) requires that claims of fraud or mistake be pleaded with particularity. The higher standard in those cases is warranted by the 'great harm to the reputation of a business firm or other enterprise' a fraud claim can do.") (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). Nonetheless, the standard remains one of whether the court can conclude that the plaintiff pleads a plausible cause of action.

In causes of action arising out of fraud, the surest determiner of plausibility is the badges of fraud. *See Frierdich v. Mottaz*, 294 F.3d 864, 869–70 (7th Cir. 2002) ("Direct proof of actual intent to defraud is not required—indeed, it would be hard to come by—and a trustee can prove actual intent by circumstantial evidence. Courts often look to 'badges of fraud' as circumstantial evidence.") (internal citations removed). Rather than highlight the badges of fraud in its Second Amended Complaints, however, the Plaintiff carries over an infirmity in the First Amended Complaints, addressing such badges in a tangential manner, at best.

This may be the result of some confusion regarding the court's discussion in the Original Memorandum Decision of the "Ponzi-like" arguments raised by the Plaintiff. It is true the court noted therein that some courts have expanded the Ponzi scheme presumption to schemes that are not within the definition of traditional Ponzi schemes. *See, e.g., PlainsCapital Leasing*, 483 B.R. at 833–35 ("Courts have, in fact, recognized that 'even if Debtor's business operations do not exactly match the description of a Ponzi Scheme,' a trustee may 'still continue to characterize the business model as a Ponzi Scheme,' thereby meeting the intent prong of a fraudulent transfer claim.") (quoting *Forman v. Salzano, et al., (In re Norvergence, Inc.)*, 405 B.R. 709, 730 (Bankr. D.N.J. 2009)). The court did not conclude, however, that this was a case in which such an expanded definition would apply. The court left that determination to be made after considering what further detail, if any, the Plaintiff provided in the Second Amended Complaints.

As discussed below, the court remains unconvinced that this is such a case. Given the failure of the Plaintiff to provide the kind of detail in the Second Amended Complaints that it provided in oral argument at the hearing on the first round of motions to dismiss, the court cannot conclude that the Plaintiff is entitled to any Ponzi scheme presumption in this matter. As a result, and given the Plaintiff's failure to address succinctly the badges of fraud allegedly applicable here, the court can also not conclude that the Plaintiff has satisfied Rule 9(b).[4]

Because it appears to the court that some of the Plaintiff's failure may be a result of a lack of clarity from the court in this regard, the court concludes that it is appropriate for the Plaintiff to be

---

[4] This is not to say the Plaintiff failed to provide any additional detail in the Second Amended Complaints. The Plaintiff provides in the Second Amended Complaints significant additional information upon which the Defendants—and the court—may better see that the Plaintiff may have plausible causes of action in fraud. They simply do not provide enough.

5

afforded an additional opportunity to meet the standards of Rule 9(b), in the manner described herein.

Before doing so, however, the court first considers the other individual grounds raised by the Defendants in the Motions to Dismiss at the Hearing and states its conclusions with respect thereto. The court then considers Rule 9(b) in greater detail.

### A. Defendants' Other Grounds for Dismissal

A motion to dismiss tests the sufficiency of the complaint; its purpose is not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive such a motion, a complaint must allege sufficient facts which, if true, would raise a right to relief above the speculative level, showing that the claim, upon which the complaint is predicated, is plausible on its face. *Twombly*, 550 U.S. at 555, 570. To be plausible on its face the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. A complaint must be dismissed if the Plaintiff has "not nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

#### 1. Good faith

Defendant American in the American Motion to Dismiss raises the good faith defense in response to the American 2nd Amend. Comp. Defendant American alleges that it "received the lease payments in good faith and without actual knowledge of EAR's scheme" and "was not put on inquiry notice to investigate and discover EAR's fraudulent purpose." American Mot. to Dismiss, at 13. In response, the Plaintiff argues that Defendant American does not establish the objective nor subjective requirements for good faith. Pl.'s Am. Resp. to the American Mot. to Dismiss, at 13.

This court has already ruled on the issue of good faith in the First Amended Complaints. Having considered the Second Amended Complaints and the Motions to Dismiss, as well as the corresponding responses, replies, and oral arguments raised with respect to good faith, the court finds nothing sufficiently additive to the arguments raised with respect to the First Amended Complaints that would cause the court to reconsider its ruling. The court therefore declines to dismiss the Second Amended Complaints on good faith grounds.

#### 2. "Net loser/winner"

The Defendants in the KLC Motion to Dismiss, Pentech Motion to Dismiss, People's Motion to Dismiss and US Bancorp Motion to Dismiss assert that the Plaintiff is barred from recovering claims that exceed the "principal" of their "investment." US Bancorp states in the US Bancorp Motion to Dismiss that "[i]n cases where the Trustee alleges that the Debtor operated a Ponzi scheme, the general rule is that a creditor gives 'value' within the meaning of a 11 U.S.C. § 548(c) in exchange for the return of the principal amount of the investment." US Bancorp Mot. to Dismiss, at 10 (citing *Perkins v. Haines*, 661 F.3d 623, 627 (11th Cir. 2011); *Ivey v. Swofford (In re Whitley)*, 463 B.R. 775, 785 (Bankr. M.D.N.C. 2012)).

The Plaintiff argues in turn that this so-called "net loser" defense does not apply to recovery under section 548(a)(1)(A) of the Bankruptcy Code, and therefore, the Plaintiff may recover the full amount paid to these Defendants. The Plaintiff argues that this inquiry is not necessary unless recovering constructive fraudulent transfers under section 548(a)(1)(B); as for "actual intent

6

fraudulent transfers, such as those alleged in the [Second Amended Complaints], the analysis is irrelevant as the focus is on the intent of the Debtor in making the transfers." Pl.'s Resp. to Pentech's Mot. to Dismiss, at 13 (citing *Fisher v. Sellis (In re Lake States Commodities, Inc.)*, 253 B.R. 866, 871 (Bankr. N.D. Ill. 2000) (Sonderby, J.)).

In the context of a motion to dismiss, the court finds that defenses such as the "net loser/winner" argument do not, under the circumstances of this case, compel the court to dismiss the complaint. Such defenses, if applicable at all given the court's ruling that the Ponzi scheme presumption does not apply, are better left to be brought in the substantive phase of this matter and are not ones upon which the court should prejudge the outcome. The standard on a motion to dismiss is a specific standard, and a plaintiff is not required to win its case at the motion to dismiss stage. *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) ("[C]omplaints do not have to anticipate affirmative defenses to survive a motion to dismiss.") (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Defenses such as the "net loser/winner" defense need to be further developed by the parties, rather than ruled on in the abstract.

### 3. *In pari delicto*

The court has previously considered and rejected the application of the *in pari delicto* defense in these matters. *Brandt v. Suntrust Leasing Corp. (In re Equip. Acquisition Res., Inc.)*, No. 09 B 39937, 2012 WL 4754949, at *4 (Bankr. N.D. Ill. Sept. 28, 2012) (Barnes, J.).

Nonetheless, in the Suntrust Motion to Dismiss Defendant Suntrust alleges that Count II of the Suntrust 2nd Amend. Comp. is barred by the doctrine of *in pari delicto* as Count II of the Suntrust 2nd Amend. Comp. brings a fraudulent transfer claim under section 544(b)(1) and 740 ILCS 160/5(a)(1), the Illinois Uniform Fraudulent Transfer Act. As such claims arise out of state law, it is a question of state law whether the *in pari delicto* defense applies.

> We therefore agree with the conclusion of every other court of appeals that has addressed this subject and hold that a person sued by a trustee in bankruptcy may assert the defense of *in pari delicto*, if the jurisdiction whose law creates the claim permits such a defense outside of bankruptcy.

*Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 598–99 (7th Cir. 2012).

Illinois law, the state law applicable here, permits the equitable defense of *in pari delicto*. *See JPMorgan Chase Bank, N.A. v. Mal Corp.*, No. 07 C 2034, 2009 WL 804049, at *5 (N.D. Ill. Mar. 26, 2009) ("Under Illinois law, the doctrine of *in pari delicto* generally stands for the proposition that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.") (internal quotation marks omitted).

Here Defendant Suntrust faces two hurdles: First it merely alleges EAR benefitted from the use of the leased equipment and from the payments by the Defendant. Such an argument alone, without further development, is insufficient to warrant dismissal of Count II on the basis of *in pari delicto*. Second, Defendant Suntrust has already argued *in pari delicto* as to the entirety of the Plaintiff's First Amended Complaint against Suntrust. The First Amended Complaint also contained Count II. This court held in response to that argument that dismissal was unwarranted based on this defense.

Defendant Suntrust did not, however, seek reconsideration of the court's ruling. While the Defendant may be right as to the state cause of action, the Defendant is nonetheless barred at this point by the law of this case from seeking a rehearing on dismissal on an issue previously argued. *See Simmons v. Catton*, No. 08-1337, 2009 WL 4923063, at *2 (C.D. Ill. Dec. 8, 2009) (A party should not be permitted "a second bite at [the] apple." Any other result "would substantially impede the efficient progress of cases in the Court's view, by allowing parties to present their arguments for Rule 12 dismissal in piecemeal fashion.").

This is not to say that the Defendant cannot raise this issue as a defense to the matter as a whole; failure to succeed on an issue at the motion to dismiss stage does not foreclose the party from making such an argument on the matter when it is heard on the merits. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *De Lage Landen Fin. Servs., Inc. v. M.D.M. Leasing Corp.*, No. 07 C 0045, 2007 WL 4355037 (N.D. Ill. Dec. 10, 2007) (finding that affirmative defenses are still available after being unsuccessfully raised in earlier motions to dismiss). However, in the context of a motion to dismiss, the Defendant had its opportunity, this court ruled with respect to it, and the Defendant failed to seek reconsideration or to have that ruling altered or vacated. It is simply not proper to bring the argument a second time. Therefore, the court denies Defendant Suntrust's Motion to Dismiss on *in pari delicto* grounds.

4. EAR's Count III preference claim

The TD Bank Motion to Dismiss contains an argument that Count III of the TD Bank 2nd Amend. Comp. is time-barred pursuant to section 546 of the Bankruptcy Code and Federal Rules of Civil Procedure Rule 15(a)(2). In the TD Bank Motion to Dismiss, Defendant TD Bank argues the Plaintiff was barred procedurally from adding Count III, a preference claim, under the time limitations set forth in section 546 because the Plaintiff did not have leave of the court.

In response, the Plaintiff argued at the Hearing that it had leave to amend the Second Amended Complaints as to Rule 9(b) and that adding Count III at the same time was immaterial, as the Plaintiff could have filed a motion to request leave to amend, which motions are liberally granted. *Asher v. Harrington*, 461 F.2d 890, 895 (7th Cir. 1972) ("[L]eave to amend should be 'freely granted when justice so requires.' The decisions of this circuit support a liberal policy of granting amendments to the complaint.") (citations omitted). The Plaintiff also argues that the preference claim "relates back" according to Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure.

As to the first argument, Rule 15(a)(2) specifically states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15. This court agrees with Defendant TD Bank that although the Plaintiff may have been afforded leave of the court to amend, the Plaintiff's adding of new counts exceeded the scope of that leave. The court is not prepared to strike Count III on the grounds that the amendment was unauthorized, however. As noted above, leave to amend is generally liberally granted. The court sees no reason not to grant such leave here.

Though leave is therefore not an issue, the Plaintiff's amendment must still otherwise be timely in order to be appropriate.

Preference actions under section 547 are governed by the time-limitations set forth in section 546(a), which states, in pertinent part, that:

8

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>    (1) the later of—
>       (A) 2 years after the entry of the order for relief; or
>       (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>    (2) the time the case is closed or dismissed.

11 U.S.C. § 546.

While section 546(a) therefore establishes a limitation, it does not, however, end the inquiry. Rule 15(c)(1)(B), made applicable herein by Bankruptcy Procedure Rule 7015, allows amendments to pleadings to "relate back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" Fed. R. Civ. P. 15(c)(1)(B); Fed. R. Bankr. P. 7015.

Here, the Plaintiff includes Count III for preferential transfers based on payments received by Defendant TD Bank from EAR. As stated by Judge Schmetterer of this court, "[t]he most important factor in determining whether to allow an amended complaint to relate back to the date of the original filing is whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading." *Brandt v. Gerardo (In re Gerardo Leasing, Inc.)*, 173 B.R. 379, 388 (Bankr. N.D. Ill. 1994) (Schmetterer, J.) (citing *Re/Max Props., Inc. v. Barnes (In re Barnes)*, 96 B.R. 833, 836 (Bankr. N.D. Ill. 1989) (Schmetterer, J.) ("Notice to the opponent is clearly the critical element in the Rule 15(c) determination.")).

In this case, the payments identified as being preferential transfers in the TD Bank 2nd Amend. Comp. were also included in Exhibit A of the Plaintiff's First Amended Complaint against Defendant TD Bank. *See* First Amended Complaint, Ex. A, Adv No. 11-02582 (Bankr. N.D. Ill. Dec. 28, 2011), ECF No. 9. As Defendant TD Bank received the First Amended Complaint ten months before the Second Amended Complaint, the Defendant had more than sufficient notice as to the challenge to the transfers. That such a challenge may include alternate theories of avoidance regarding those same transfers cannot be a matter of surprise to Defendant TD Bank. It is therefore this court's ruling that the preferential transfer claim relates back to the First Amended Complaint and is therefore timely.

B. Dismissal Under Rule 9(b)

The court has already noted above the general standards as they relate to motions to dismiss. Where fraud is alleged, a more rigorous pleading standard comes into play. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

1. Ponzi scheme

The Ponzi scheme presumption has been held to sufficiently establish "that the scheme's orchestrators acted with the actual intent to hinder, delay or defraud creditors pursuant to

§ 548(a)(1)." *Grede v. Bank of New York Mellon, et al.* 441 B.R. 864, 881 (N.D. Ill. 2010) (citing *Plotkin v. Pomona Valley Imps., Inc., et al. (In re Cohen)*, 199 B.R. 709, 717 (B.A.P. 9th Cir. 1996)).

The Defendants' Motions to Dismiss each raise the question of whether the Plaintiff is entitled to the Ponzi scheme presumption it pleads. As noted above, however, after two opportunities to brief and argue this question to the court, the Plaintiff has failed to convince the court that the Ponzi scheme presumption should apply here.

Despite the court's explicit direction to the Plaintiff to "provide the necessary specificity regarding the alleged fraudulent scheme and the transfers allegedly made in furtherance thereof," *PlainsCapital Leasing*, 483 B.R. at 836, the Second Amended Complaints were, in certain instances, less specific than the First Amended Complaints. By excluding the prior discussion of Sheldon Player (the alleged mastermind behind the alleged Ponzi scheme in the First Amended Complaints), for example, the Second Amended Complaints have lost ground in this regard.

The court has considered the authority cited by the Plaintiff on those matters where courts have extended the Ponzi scheme presumption to fraudulent schemes that would not otherwise meet the standard definition of Ponzi schemes. Based on the information and argument provided, however, the court concludes that the scheme allegedly perpetrated in this case is too different from the traditional Ponzi scheme for this court to find that the standard under Rule 9(b), what is otherwise a very specific standard, should be altered. The Plaintiff must specifically plead the intent upon which this matter is predicated, and has failed to do so in the Second Amended Complaints.

Because the court concludes that its original discussion of Ponzi-like schemes was misleading, the court cannot simply dismiss this matter at this stage. Further leave to amend is therefore appropriate.

2. Badges of fraud

The foregoing leave to amend affords the court an opportunity to be more specific as to what is expected of the Plaintiff. As the Plaintiff is certainly aware, it is always of utmost importance in a matter sounding in fraud that a plaintiff demonstrate traditional badges of fraud. Though it should therefore be tautological that such importance applies here as well, the court finds it useful to drive that point home: To satisfy Rule 9(b) the Plaintiff must show all parties those badges of fraud upon which it relies. Such is even more important here, given the court's ruling on the Ponzi scheme presumption.

As the parties are aware, allegations of actual intent fraudulent transfers require proof that the transfers were made by Debtor "with actual intent to hinder, delay, or defraud" its creditors. 11 U.S.C. § 548; 740 ILCS 160/5(a)(1). The requirement of actual intent may be satisfied through circumstantial evidence. Such are the "badges of fraud," of which the presence of several "may create a presumption of fraudulent intent." *Grede*, 441 B.R. at 881. Under federal law such badges of fraud include:

> (1) whether the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (2) whether the debtor retained control of the asset; (3) whether the transfer was to a family member; (4) whether the transfer was prior to debtor incurring a substantial debt; (5) whether the transfer was substantially all of

debtor's assets; (6) whether the debtor received consideration for the transfer; (7) whether the transfer was disclosed or concealed; (8) whether the debtor made the transfer before or after being threatened with suit by creditors; and (9) whether the debtor absconded.

*Id.* Courts have unambiguously stated that "where there is no direct evidence of fraudulent intent[,] ... the Federal Rule of Civil Procedure 9(b) particularity requirement can be satisfied by allegations of [such] 'badges of fraud.'" *Peterson v. Atradius Trade Credit Ins., Inc., et al.* (*In re Lancelot Investors Fund, LP*), 451 B.R. 833, 838 (Bankr. N.D. Ill. 2011) (Cox, J.); *see also Frierdich*, 294 F.3d at 869–70.

For matters arising out of Illinois state law, the Uniform Fraudulent Transfer Act provides a non-exclusive list of the badges of fraud, as follows:

(1)  the transfer or obligation was to an insider;
(2)  the debtor retained possession or control of the property transferred after the transfer;
(3)  the transfer or obligation was disclosed or concealed;
(4)  before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5)  the transfer was of substantially all the debtor's assets;
(6)  the debtor absconded;
(7)  the debtor removed or concealed assets;
(8)  the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9)  the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b)(1)–(11).

While the Second Amended Complaints provides more detail regarding the Debtor's transactions, the Second Amended Complaints touch upon the various badges of fraud in a piecemeal fashion. The court finds that what the Second Amended Complaints do contain is insufficient to satisfy Rule 9(b). While the court could speculate as to what badges of fraud are at play, as articulated by the court in *United States v. Lanzotti*, "[i]t is not this court's responsibility to research and construct the parties' arguments." 205 F.3d 951, 957 (7th Cir. 2000) (citations omitted). For these reasons, the court finds that the Plaintiff has not satisfied the Rule 9(b) standard.

To be clear, to survive a motion to dismiss, it is not necessary for a complaint expressly to state every individual transaction that took place or that every traditional badge of fraud exists in the matter at bar. "[A] plaintiff is not required to set forth each and every transaction which it believes will be in dispute in its complaint. As provided in Federal Rule of Civil Procedure 8, a complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Brutyn, N.V. v. Anthony Gagliano Co., Inc.*, No. 04 C 527, 2006 WL 3354529, at *3 (E.D. Wis.

Nov. 17, 2006) (citing Fed. R. Civ. P. 8); *see also United States ex rel. Obert-Hong v. Advocate Health Care*, No. 99 C 5806, 2001 WL 303692, at *3 (N.D. Ill. Mar. 28, 2001) ("[T]he complaint need not recite specifics for every transaction. But relator 'must provide some representative examples of the fraud which detail the specifics of who, where and when.'") (quoting *United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Syst. Corp.*, No. 4-96-734, 1997 U.S. Dist. LEXIS 21402, at *33 (D. Minn. Mar. 3, 1997)).

The Plaintiff has, for the most part, described transactions in a detail necessary to meet the standards of *Twombly* and *Iqbal*. However, the Plaintiff continues to rely on the court to conclude that the necessary badges of fraud arise out of such transactions. Something more is needed, especially in the nature of intent.

For that reason, the court grants the Plaintiff leave to amend the Second Amended Complaints in the manner discussed below.

C. <u>Leave To Amend the Second Amended Complaints</u>

The Defendants in their Amended Joint Statement of Issues argue that the claims in the Second Amended Complaints are "implausible on their face and therefore fail as a matter of law." Am. Jt. St. of Issues, 4, No. 09-39937 (Bankr. N.D. Ill. Apr. 19, 2013), ECF No. 877. The court disagrees. The court can, once again based on the oral arguments at the Hearing rather than the Second Amended Complaints themselves, see that the Plaintiff's claims may be plausible. While the court finds that the necessary badges of fraud have, in part, not been pled at this stage, the court nonetheless finds that if they are, a third amended complaint may be plausible and may be capable of moving forward.

As noted above, it is well settled in case law that leave to amend a complaint should be "freely given." Fed. R. Civ. P. 15(a). As explained by the Supreme Court in *Foman v. Davis*:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. 178, 182 (1962). Here the Plaintiff has not yet crossed the "repeated failure to cure" line. But the court considers it unlikely that continual failure in this regard could be treated as anything other than problematic under this standard. While the court therefore grants the Plaintiff a fourth attempt at a complaint that meets the standards of Rule 9(b), the court does not grant leave to add additional counts or make changes other than those addressing what is required hereunder. Should the Plaintiff fail to plead the badges of fraud in a way that the court can reasonably determine that they satisfy Rule 9(b), then the court will be hard pressed not to dismiss the complaint permanently.

As a result, any renewed motions to dismiss in this matter should be predicated either on the standards of Rule 9(b) or, as applicably, the failure of the Plaintiff to comply with the constraints of this Memorandum Decision. At this point, having two rounds of motions to dismiss and provided the Plaintiff follows the guidance set forth herein, any other issues should have already been raised.

## CONCLUSION

For all of the foregoing reasons, the Second Amended Complaints will be dismissed on July 8, 2013, unless the Plaintiff has on or by July 6, 2013 amended the complaints to satisfy Rule 9(b).

Every ground upon which the parties seek dismissal of the complaint that has not been expressly granted herein or previously granted by the court is denied.

A separate order to this effect will be issued, concurrent with this Memorandum Decision, in each of the affected adversary proceedings.

Dated: June 6, 2013

ENTER:

_____
Timothy A. Barnes
United States Bankruptcy Judge

13